UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MICHAEL RAKEMAN, BRIAN SCHIELE,
LUIS DELGADO, ROBERT TOLLIN,
WILLIAM McCUTCHAN, JOHN NELSON
FENRICH and KEVIN BLANEY,

               Plaintiffs,

    --against—

MLD MORTGAGE INC. and LAWRENCE DEAR.

               Defendants.

-------------------------------------------------------------X

          **16 -CV- 00453
(ENV)(GRB)**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURUSANT TO RULE 56 SERVED ON DECEMBER 6, 2019

**RAYMOND NARDO, P.C.**
**Counsel for Defendants**
**129 Third Street**
**Mineola, NY 11501**
**(516)248-2121**

TABLE OF CONTENTS

TABLE OF CASES……………………………………………………………………….ii

PRELIMINARY STATEMENT………………………………………………………… …1

STATEMENT OF FACTS…………………………………………………………………..2

ARGUMENT…………………………………………………………………………… …..3

POINT I.
SINCE THE MATERIAL FACTS ARE NOT IN DISPUTE, DEFENDANTS
ARE ENTITLED TO "SUMMARY JUDGMENT" …………………………......3

POINT II.
PLAINTIFFS ARE EXEMPT FROM THE FLSA AS OUTSIDE
SALESPERSONS, AS THEY AGREED ……………………….……………….....4

POINT III.
PLAINTIFFS WERE EXEMPT AS HIGHLY COMPENSATED EMPLOYEES
AND/OR EXECUTIVE EMPLOYEES AFTER THEY RECEIVED SALARIES
……………………….……………………………………….……………….....…...9

POINT IV.
PLAINTIFFS WERE PAID COMMISSIONS DUE FOR ALL SALES ……....13

POINT V.
DEFENDANT LAWRENCE DEAR IS NOT AN EMPLOYER UNDER
THE FLSA OR NYLL ……………………………………………………………14

CONCLUSION …………………………………………………………………………17

CERTIFICATE OF SERVICE …………………………………………………………18

i

## TABLE OF CASES

*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011)……………..…………………………………...3

*Hartman v. Prospect Mortgage, LLC*, 11 F.Supp3d 597 (E.D.Va. 2014) …………………………….6

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d. Cir. 1984)……………………………………..14

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ………………………………..………………..14

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ……………….....……..15

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999)…………………….......……….14

*Kim v. Kum Gang, Inc.*, 2015 WL 2222438 (S.D.N.Y. 2015)………………….………………..…..15

*Lopez v. Acme American Environmental Co., Inc.*, 2012 WL 6062501 (S.D.N.Y. 2012)…….…...15

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007)……………………………….3

*Morano v. Intercontinental Capital Group, Inc.*, 2012 WL 2952893 (S.D.N.Y. 2012)………….…..…..11

*Sai Qin Chen v. East Market Restaurant, Inc.,* 2015 WL 5730014 (S.D.N.Y. 2015)………..…………..14

*Salinas v. Starjem Restaurant Corp.,* 123 F. Supp. 3d 442 (S.D.N.Y. 2015)……………...…….15, 16

*Sexton v. American Golf Corp.*, 2015 WL 5884825 (E.D.N.Y. 2015)…………………..……………16

*Taylor v. Waddell & Reed, Inc.,* 2012 WL 10669 (S.D.Cal. 2012)…………………………………..….6

*Torrenegra v. Grameen America, Inc.*, 2017 WL 1401291 (E.D.N.Y. 2017)…………………………5

*Vasto v. Credico (USA) LLC*, 15-CV-09298 (PAE) (S.D.N.Y. Oct. 27, 2017)………………….……… ...7

## PRELIMINARY STATEMENT

Passed during the throes of the Great Depression, the Fair Labor Standards Act ("FLSA"), intended, *inter alia*, to provide full employment for American workers by mandating overtime for hours worked in excess of 40 hours per week, thus incentivizing employers to hire additional employees at a cheaper rate of pay.  The FLSA provides causes of actions against employers who do not pay required minimum wages or overtime.  It was not intended, nor should it be interpreted, to give millionaires a claim for overtime pay. As Outside Mortgage Loan Originators ("OMLO's"), Plaintiffs were exempt from the overtime requirements of the FLSA as outside salespersons, to which they agreed in written Employment Agreements.  Now Plaintiffs claim otherwise, which would warrant result entirely inconsistent with the FLSA.  For instance, Plaintiffs Rakeman and Schiele were paid commissions of approximately $1,049,955 in 2014.  In their amended complaints, they claim that they worked 106 hours per week.  Thus, their weekly rate would amount to $20,191, and their hourly rate, for 106 hours per week, would amount to $190.  Their unpaid overtime rate (at half time) would amount to $95.   For 66 hours of overtime, they would each be owed $6,286 per week, or $326,873 per year, without liquidated damages, solely for 2014.  Plaintiffs' aggrandizing claims pervert the FLSA.

After they subsequently received salaries, Plaintiffs were exempt as highly compensated employees and/or executive employees.  Moreover, Plaintiffs have not shown any entitlement to further commissions, and Defendant Lawrence Dear, who was not even deposed, is not an "employer" under the FLSA or New York Labor Law ("NYLL").

Consequently, Plaintiffs' claims must be dismissed as a matter of law, pursuant to Rule 56.

## STATEMENT OF FACTS

The facts are fully set forth in the Defendants' Rule 56.1 Statement, submitted simultaneously with this brief, and are deemed to be fully incorporated herein.

ARGUMENT

POINT I.

SINCE THE MATERIAL FACTS ARE NOT IN DISPUTE,
DEFENDANTS ARE ENTITLED TO "SUMMARY
JUDGMENT"

Summary judgment is warranted where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material "when it might affect the outcome of the suit under governing law," and an issue of fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).  While the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, when such burden is met, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotations and citations omitted).  In the present matter, no reasonable factfinder can dispute that the Plaintiffs, including some who earned 7 figures annually, are exempt under the FLSA, as they agreed at the inception of their employment, and they are not owed any more commissions.

## POINT II.

## PLAINTIFFS ARE EXEMPT FROM THE FLSA AS OUTSIDE SALESPERSONS, AS THEY AGREED

Plaintiffs each executed an Employment Agreement (Exhibit F to Nardo Declaration, Employment Agreements).  Each employee had a right to consult with an attorney before signing the agreement (Exhibit F to Nardo Declaration, ¶ 2).  The employees are all white collar employees who deem themselves to be sophisticated (Defendants' Rule 56.1 Statement, ¶ 5).  As set forth in the Employment Agreements, Plaintiffs agreed that:

> The employee shall be employed in the capacity as an Outside Sales Employee as defined pursuant to the N.J.A.C. 12:56-7.2 of the Wage and Hour Regulations, incorporating by reference the provisions of 29 C.F.R. Part 541, except for those references that apply solely to those individuals employed by government employers.

(Exhibit F to Nardo Declaration, Employment Agreements).   Further, the Employment Agreements state that, "Employee is considered an outside Loan Officer and is not required to be in the office," and each employee received a higher compensation for self-generated leads than for company provided leads (Exhibit F to Nardo Declaration, Employment Agreements, Exhibit A). Consequently, it is clear that Plaintiffs intended to be, agreed to be, and were, outside salespersons. As such, pursuant to 29 U.S.C. § 213(a)(1), Plaintiffs were exempt from the overtime requirements of the FLSA and NYLL.

The Agreement set forth Plaintiff's duties as an OMLO as follows:

> Employee will be responsible for satisfactorily originating loans including: (a) taking information from the applicant and completing the application in a timely manner; (b) educating the prospective applicant in the financing process and advising the applicant about the different types of loan products available; (c) collecting financial information (bank statements, tax returns) and other related documents that are part of the application process; (d) maintaining regular contact with the applicant between application and closing

4

> to inform them of the status of their application, to respond to any
> questions posed, and to gather any additional information as needed;
> (e) assisting, when necessary, in collecting all fees applicable to the
> application and the closing process; and (f) performing such other
> duties and/or operational related functions necessary to the
> origination of mortgage loans as the Employer may assign.

(Exhibit F to Nardo Declaration, Employment Agreements).  Plaintiffs agreed that this was an

accurate description of their duties (Defendants' Rule 56.1 Statement, ¶ 8).  Plaintiffs, as OMLO's,

had to discern the objectives of the prospective client and educate the prospective client about the

available products, including, the various types of mortgages – FHA, VA, conventional – and

durations from 10 to 30 years, along with other options, such as paying for discount points

(Defendants' Rule 56.1 Statement ¶¶ 34-42).

As set forth in 29 C.F.R. § 541.500(a), an outside salesperson is someone whose primary

duty is:

(i)     making sales within the meaning of section 3(k) of the Act, or

(ii)    obtaining orders or contracts for services or for the use of facilities for which a
        consideration will be paid by the client or customer; and

(2)     Who is customarily and regularly engaged away from the employer's place or
        places of business in performing such primary duty.

According to *Torrenegra v. Grameen America, Inc.*, 2017 WL 1401291 at *8 (E.D.N.Y.

2017), "[t]he outside salesman 'exemption is premised on the belief that exempt employees

typically earn[] salaries well above the minimum wage and enjoy [] other benefits that set them

apart from the nonexempt workers entitled to overtime pay."  This is especially true where, as in

*Torrenegra*, the work is "ill suited to hourly pay and could not easily be transferred to another

employee once Plaintiff reached a forty hour cap." *Id.*  Unlike salaried work which pays a fixed

amount per week, a commissioned employee earns compensation based on his efforts and sales,

and the work is not fungible.  According to one OMLO, "[a] commission job it's what you put in

is what you get out as far as the income goes" (Exhibit G to Nardo Declaration, Delgado Tr. at 81).

There is no dispute that Plaintiffs fit the criteria under 29 C.F.R. § 541.500(a)(i) and (ii). They sold financial products to customers and were paid on a commission only basis until January 2015 (Defendants' Rule 56.1 Statement, ¶¶ 9-11, 33, 44). Plaintiffs will claim that they are not outside salespersons, contrary to the agreements that they signed, because they do not fall under §541.500(a)(2) as they were not "customarily and regularly engaged away from the employer's place" of business in performing these duties. As set forth in *Hartman v. Prospect Mortgage, LLC*, 11 F.Supp3d 597, 603 (E.D.Va. 2014), "[t]he phrase 'customarily and regularly' is not a majority of the time test." In fact, "'[t]he DOL [has] likewise confirmed that selling or sales related activity outside the office 'one or two hours a day, one or two times a week' satisfie[s] the test for the exemption.'" *Hartman*, at 503, *citing*, *Taylor v. Waddell & Reed, Inc.,* 2012 WL 10669, at *3 (S.D.Cal. Jan 3, 2012). Moreover, "[t]he fact that an employee also performs significant work inside the office does not bar the exemption."

According to the Employment Agreements executed by Plaintiff, and the corresponding practice, Defendants never required Plaintiffs to work inside the office and had no set schedules (Defendants' Rule 56.1 Statement ¶¶ 13-24). Plaintiffs had the entry and alarm codes, and entered and left the building as they pleased (Defendants' Rule 56.1 Statement ¶¶ 13-15). They chose when to come and go to the East Meadow office (Rule 56.1 Statement, ¶¶ 13-15). They testified that the vast majority of their sales were self-generated through their own efforts, instead of sales generated by the company (Defendants' Rule 56.1 Statement ¶ 30), but one Plaintiff disingenuously testified that he engaged in these self-generated sales (rather than company provided leads) while "glued to my chair" (Exhibit B to Nardo Declaration, Rakeman Tr. 214).

Plaintiffs testified that they were answering phones and engaging clients from their homes, at restaurants, while commuting, while rocking their newborns, and while away from the office because they had to be available for their client base (Defendants' Rule 56.1 Statement ¶¶ 17-24). This demonstrates that Plaintiffs were "ill suited for hourly pay."  Plaintiffs ran their own mini-businesses, soliciting clients from outside sources, conducting business from the office, home, outside locations, and from their cellphones (Defendants' Rule 56.1 Statement ¶¶ 17-24). Plaintiffs testified that they spent 20% of their time outside the office (Defendants' Rule 56.1 Statement ¶ 16), worked two to two and one half hours at home each day (Defendants' Rule 56.1 Statement ¶ 17), worked 20 to 25 hours per week at home (Defendants' Rule 56.1 Statement ¶ 18), marketed on weekends (Defendants' Rule 56.1 Statement ¶ 19), and two hours a day at home (Defendants' Rule 56.1 Statement ¶ 20).  Defendants would check their phones and emails from wherever they were situated (Defendants' Rule 56.1 Statement ¶¶ 21-23).   As set forth above, such work could not be easily be transferred to another employee once Plaintiffs "reached a forty hour cap."  Plaintiffs were what they agreed to be – outside salespersons, exempt from the FLSA and NYLL.

Similar to *Torrenegra*, the Plaintiffs, "independently solicited new clients on a one-on-one basis with only minimal direct supervision.  By Plaintiff's own admission, he was not required to punch in or out of work and did not have clearly set hours.  He was also free to determine where to approach potential members." *Torrenegra* at *8.  And in *Vasto v. Credico (USA) LLC*, 15-CV-09298 (PAE)(S.D.N.Y. Oct. 27, 2017) (Dkt. #247, p. 40) (emphasis added), the Plaintiffs also "independently solicited new business in the form of new applications for . . . services through Assurance Wirelesss.  They received a *commission-based* salary."  As further proof of Plaintiff's independent solicitation of business outside the workplace, Plaintiffs Rakeman and Sheile actually

7

hired and paid other Plaintiff OMLO's (while they worked for MLD) to provide marketing services for them and to handle overflow sales for them. (Defendants' Rule 56.1 Statement ¶¶ 29).  Aside from soliciting clients for mortgages, Plaintiffs Rakeman and Schiele were carrying on their own independent businesses, which further indicates that they were independent, outside commissioned salespersons.

Based on this record, no reasonable factfinder could come to any conclusion other than that the Plaintiffs, who earned six or seven figures each year, were exempt from the overtime requirements of the FLSA as outside salespersons.

POINT III.

PLAINTIFFS WERE EXEMPT AS HIGHLY COMPENSATED
EMPLOYEES AND/OR EXECUTIVE EMPLOYEES AFTER
THEY RECEIVED SALARIES

Aside from squarely falling into the outside salesperson exemption, as set forth herein,

Plaintiffs are also exempt as "highly compensated" employees pursuant to 29 U.S.C. § 213(a)(1).

Pursuant to 29 § C.F.R. 601, a highly compensated employee has to be paid greater than

$100,000 (at that time) and "perform[] any one or more of the exempt duties or responsibilities

of an executive, administrative or professional employee."  "A high level of compensation is a

strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis

of the employee's job duties." 29 C.F.R. § 541.601(c).  During 2014 and 2014, all the Plaintiffs

earned more than $100,000 except for Luis Delgado, who earned $62,000 through September 21,

2015 (Exhibit J to Nardo Declaration, W-2's).  Plaintiffs were also paid on a salary basis since

the salaries noted on the Notice of Acknowledgement and Pay forms exceeded $455 per week

and the relevant New York State regulations (Defendants' Rule 56.1 Statement ¶ 33).

Thus, to qualify for the highly compensated exemption, Plaintiffs need only satisfy one of

the exempt duties tests for a professional, executive, or administrative employee.  According to

29 C.F.R. § 541.202(a),

> To qualify for the administrative exemption, an employee's
> primary duty must include the exercise of discretion and
> independent judgment with respect to matters of significance. In
> general, the exercise of discretion and independent judgment
> involves the comparison and the evaluation of possible courses of
> conduct, and acting or making a decision after the various
> possibilities have been considered. The term 'matters of
> significance' refers to the level of importance or consequence of
> the work performed.

9

Moreover, 29 C.F.R. § 541.202(c) provides that, "The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."

In the present case, Plaintiffs were required to exercise independent discretion and judgment to tailor a menu of financial products to the consumer's lending needs, while simultaneously educating the consumer (Defendants' Rule 56.1 Statement ¶¶ 34-42). There were different types of loans (conventional, FHA, or VA), different interest rates (variable or fixed),  different nominal interest rates depending on how much money the consumer put down, and different terms, or durations, for the loans (Defendants' Rule 56.1 Statement ¶¶ 34-42). Based on Plaintiffs' assessment of the consumer's financial picture and needs, Plaintiffs would tailor and recommend a financial loan product for each transaction (Defendants' Rule 56.1 Statement ¶¶ 34-42).  Since these duties constitute an exercise of independent judgment and discretion, they fall under the administrative exemption, and no reasonable factfinder can conclude anything other than that the Plaintiffs were exempt as highly compensated employees.

Plaintiffs Rakeman and Schiele also performed additional exempt duties pursuant to the Executive Exemption.  An executive, set forth in 29 U.S.C. §213(a)(1), is an employee who is paid on a salary basis and:

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

In the course of their duties for MLD, Plaintiffs Rakeman and Schiele referred overflow loans to other OMLO's each month (Defendants' Rule 56.1 Statement, ¶ 29), and created or used their own separate corporations to pay other OMLO's for marketing services performed for Rakeman and Schiele (Defendants' Rule 56.1 Statement ¶ 43). Rakeman and Schiele independently engaged these OMLO's and other staff, supervised them, used their work product, and issued 1099's totaling more than $160,000 in 2014 (Defendants' Rule 56.1 Statement ¶¶ 28, 43). Consequently, Rakeman and Schiele performed both administrative *and* executive exempt duties for MLD, which doubly qualifies them as exempt highly compensated employees, after they began receiving a salary in 2015.

Plaintiffs claim that they were not paid "on a salary basis" pursuant to 29 C.F.R. § 541.100. First, the Notice of Pay and Acknowledgement Forms distributed to Plaintiffs in early 2015 squarely indicate that they were paid on a salary basis exceeding the Federal and NYS threshholds (Exhibit M to Nardo Declaration, Notice of Pay and Acknowledgement Forms). As set forth in *Morano v. Intercontinental Capital Group, Inc.*, 2012 WL 2952893, at fn. 7, (S.D.N.Y. 2012), "the 'salary basis' test, . . . consists of 'a requirement that the exempt employee receive no less than a specified level of compensation, and a requirement that the employee's compensation be paid 'on a salary basis.'" In *Morano*, the OMLO's were paid $628 every two weeks, as a draw vs. commissions, which could not satisfy the $455 per week requirement. In the present case, the OMLO's always received more than $455 per week both as a salary (as indicated on the Notice of Acknowledgement and Pay Form) and in the form of commissions. This satisfies the "salary basis" test. Finally, the OMLO's were paid on a salary

11

basis because they received a "minimum guarantee plus extras" since their compensation never dipped below the required $455 per week. *See,* 29 C.F.R. § 541.604.

Consequently, any reasonable factfinder must find that the Plaintiff OMLO's were exempt from the FLSA as highly compensated employees based on their administrative and/or executive duties, and the fact that they were paid on a salary basis.

## POINT IV.

### PLAINTIFFS WERE PAID COMMISSIONS DUE FOR ALL SALES

Plaintiffs claim that they are owed commissions for their self-generated sales. Plaintiffs provided no evidence that they were underpaid. They proffer rank speculation, without any documentation of their own loans and closings. There is no basis to entertain such a claim absent documentary evidence.

POINT V.

## DEFENDANT LAWRENCE DEAR IS NOT AN EMPLOYER UNDER THE FLSA OR NYLL

Under the Second Circuit's "economic realities test," an individual cannot be held liable as an employer under the FLSA or the NYLL unless he or she possess "control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). Courts in this Circuit therefore first examine "the scope of an individual's authority or 'operational control' over a company" *Id.*, at 106. Specifically, the court looks for evidence of the individual's "authority over management, supervision and oversight of [the company's] affairs in general." *Id.*, at 111. Then, the court examines the four factors set forth in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d. Cir. 1984), to wit, whether the alleged employer:

(1) had the power to hire and fire the employees,

(2) supervised and controlled employee work schedules or conditions of employment,

(3) determined the rate and method of payment, and

(4) maintained employment records.

All these factors must be considered in light of the totality of the circumstances, keeping in mind the "the overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), *citing*, *Carter*, 735 F.2d at 12). The purpose is to determine whether the alleged employer was the driving force behind the operation and whether, in reality, the employees were economically dependent upon that particular person. As the Court manifested in *Sai Qin Chen v. East Market Restaurant, Inc.*, 2015 WL 5730014, at *7 (S.D.N.Y. 2015), (*citing, Irizarry v. Catsimatidas*, 722 F.3d 99 (2d Cir. 2012); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999); *Inclan v.*

14

*New York Hospitality Group, Inc.*, 95 F.Supp.3d 490 (S.D.N.Y. 2015); *Kim v. Kum Gang, Inc.*, 2015 WL 2222438 (S.D.N.Y. 2015), "[t]he cases in this Circuit dealing with individual liability under the FLSA and the Labor Law ordinarily involve allegations that an individual had unilateral control over the material aspects of the conditions of employment and was, therefore, an employer within the meaning of the FLSA and the Labor Law." Thus, "[w]hen it comes to 'employer' status under the FLSA, control is key." *Lopez v. Acme American Environmental Co., Inc.*, 2012 WL 6062501, at *3 (S.D.N.Y. 2012). Applying this test, no reasonable factfinder could find that Defendant Lawrence Dear had sufficient unilateral control over MLD, or its employees, to be held individually liable.[1]

A.  Lawrence Dear is not an "Employer" under the FLSA or NYLL

With respect to the four *Carter* factors, it is undisputed that Lawrence Dear (1) did not hire or fire employees, (2) did not set the work schedule of any employee, (3) did not determine the rate or method of employees' pay and (4) did not maintain any employment records for MLD. Simply put, there is no evidence proffered by Plaintiffs that Defendant Lawrence Dear met any of the *Carter* factors (Defendants' Rule 56.1 Statement, ¶¶ 47-50).

In *Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 450-51 (S.D.N.Y. 2015), the CEO, president, and majority shareholder of the defendant company was found not to be an "employer," despite the fact that she was present in the restaurant on a daily basis, gave directions to employees, ran the front of the house operations of the restaurant, was involved in hiring certain employees and even ***signed*** employees' paychecks. Although the authority to sign paychecks is often "key" to a finding of "employer" status, the court ruled, in this case, that the individual

---

[1] This is true under both the FLSA and NYLL because "[t]he statutory standard for employer status under the NYLL is nearly identical to that of the FLSA." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013), *citing*, 29 U.S.C. § 203(d); N.Y. Lab. Law § 190(3).

defendant's signature of on paychecks was not probative because she was otherwise uninvolved in employee compensation, and she only signed the checks because they required the signatures of two owners.

As set forth in *Sexton v. American Golf Corp.*, 2015 WL 5884825, at \*6 (E.D.N.Y. 2015):

> The record clearly shows that Collins was not an 'employer' under the FLSA. He did not have the general, overall authority typical of an employer. He has no ownership in AGC, reported to a supervisor, and was not involved in big picture decisions about how AGC is run. (Collins Dep. 14.) The *Carter* test likewise suggests that he is not an 'employer.' While Collins was involved in hiring and firing, he did not have the sole power to hire or fire employees. (Collins Dep. 16–17.) He did not control Sexton's or other employees' work schedules. The fact that Collins sometimes told Sexton what to do does not make him an employer. *See Salinas v. Starjem Rest. Corp., No. 13-CV-2992 (AT), 2015 WL 4757618, at \*14 (S.D.N.Y. Aug. 12, 2015* ('an individual does not become an employer merely by directing employees to carry out tasks'). Additionally, Collins did not determine employees' rate of pay. (Collins Dep. 17.) There is no evidence that he was involved in keeping employment records. Perhaps most importantly, Collins had no responsibility for Sexton's classification as an exempt employee. (Collins Decl. 9.) Considering the totality of the circumstances, the record is devoid of evidence that Collins was Sexton's employer. Summary judgment is therefore granted and the FLSA and NYLL claims against Collins are dismissed.

The record in this case is completely devoid of any evidence whatsoever that could possibly support a finding that Defendant Lawrence Dear was an "employer" under the FLSA or NYLL, subjecting him to individual liability under the Act. He was not even deposed. No reasonable factfinder can find that Defendant Lawrence Dear was an "employer," and is he entitled to summary judgment dismissing the claims against him.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment must be granted, and the case dismissed.

Dated: Mineola, NY
December 6, 2019

Respectfully submitted,

RAYMOND NARDO, P.C.
Attorneys for Defendants

By:

Raymond Nardo, Esq.
129 Third Street
Mineola, NY 11501
(516) 248-2121

17

CERTIFICATE OF SERVICE

I certify that on December 6, 2019, I, Raymond Nardo, served by:

___ mailed, first class       ___ return receipt requested

___ overnite mailed       ___ faxed

XX  Email       ___ by ECF

the enclosed:

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURUSANT TO RULE 56**

TO:

Justin Reilly, Esq.
Neil H. Greenberg & Associates, P.C.
4242 Merrick Road
Massapequa, NY 11758
justin@nhglaw.com

RAYMOND NARDO, ESQ.

18