UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MICHAEL RAKEMAN, BRIAN SCHIELE,
LUIS DELGADO, ROBERT TOLLIN,
WILLIAM McCUTCHAN, JOHN NELSON
FENRICH and KEVIN BLANEY,

                         Plaintiffs,   16-CV-00453
   --against—   (ENV)(GRB)

MLD MORTGAGE INC. and LAWRENCE DEAR,

                         Defendants.

---------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURUSANT TO RULE 56
## SERVED ON JANUARY 28, 2020

**RAYMOND NARDO, P.C.**
**Counsel for Defendants**
129 Third Street
Mineola, NY 11501
(516)248-2121

ARGUMENT

POINT I.

PLAINTIFFS CANNOT CREATE ISSUES OF FACT
SUFFICIENT TO WITHSTAND SUMMARY JUDGMENT

Plaintiff claims that they "all had set work schedules that they adhered to" (Plaintiff's Memorandum of Law, p. 4). As Outside Mortgage Loan Officers ("OMLO's"), Plaintiffs were told, in writing, that they were "not required to be in the office" (Exhibit A to Exhibit F to the Declaration of Raymond Nardo). Further, Plaintiffs testified that they worked at home, restaurants, during their commutes, and while rocking their newborns (Defendants' Memorandum of Law, p. 7). Plaintiffs also claim that they spent 20% of their time out of the office, worked two to two and one half hours at home each day, worked 20 to 25 hours per week at home, and marketed on weekends (Defendants' Memorandum of Law, p. 7). Consequently, the assertion that the Plaintiff OMLO's "spent 99% of their time working at the NY Branch office" (Plaintiffs' Memorandum of Law, p. 4) is patently false, according to Plaintiffs' own testimony.

There is no dispute that Plaintiff OMLO's were paid on a "commission-only basis" until January 2015 (Plaintiffs' Memorandum of Law, p. 6). Thereafter, Plaintiffs began receiving a salary, according to documents they executed (See Exhibit M to Declaration of Raymond Nardo). Plaintiffs deny receiving a salary, and attempt to make a "he said, she said," out of their compensation. Oftentimes, parties dispute verbal communications. Parties can anticipate, and avoid, such disputes, by expressing their intent in an unambiguous writing. In this case, the

1

written documents, signed by both parties, indicate that Plaintiffs would receive a salary. This writing, and the subsequent payments, cannot be reduced to a "he said, she said," dispute.

Plaintiffs cannot fabricate a factual dispute by claiming that the document they signed does not mean what it says. Where there is a clear, unambiguous writing, the Court should not allow parol evidence to determine the meaning. "Under New York law, '[i]f the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence.'" *Utica Mut. Ins. Co. v. Munich Reinsurance America, Inc.*, 594 Fed.Appx. 700, 2014 WL 6804553 at *2 (2d Cir. 2014); *see, also, International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)("If an ambiguity is found, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract'"). Plaintiffs agreed, in writing, to receive a salary, they received the salary, and cannot now dispute the purpose or method of that payment, despite the fact that Ms. Denise Veracka, whose son is currently suing MLD, testified that "she felt very uncomfortable in having him sign" (Plaintiffs' Brief, p. 16).

Plaintiffs Rakeman and Schiele claim that Defendants did not pay all their commissions. As OMLO's, they signed documents indicating that they would have different rates for self-generated and company generated leads (Exhibit F to Declaration of Raymond Nardo). Plaintiffs Rakeman and Schiele claim that they were in the office day and night, but want to receive credit for their commissions as *self-generated leads*. If the leads were truly self-generated, Plaintiffs would have to leave the office to generate them. Instead, they relied upon leads which were initially funded by MLD (and then debited from Plaintiffs' profit and loss statement). Those

leads, which called directly into MLD, were company generated, not self-generated. The company generated leads paid 75 basis points, while the self-generated leads paid 275 basis points (which later changed to 400 and then 250 basis points). If these commissions were calculated as company leads, no commissions are due.

Plaintiffs claim that "it is well-settled that exemptions to the FLSA are 'narrowly construed against the employers seeking to assert them and their application limited to hose establishments plainly and unmistakably within their terms and spirits'" (Plaintiffs' Memorandum of Law, p. 9, footnote and citation omitted). The United States Supreme Court has soundly rejected this approach. In *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142, 200 L.Ed.2d 433, 86 USLW 4167 (2018) (emphases added), the United States Supreme Court held as follows:

> The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. 845 F.3d, at 935–936. *We reject this principle as a useful guidepost for interpreting the FLSA*. Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.' Scalia, Reading Law, at 363. The narrow-construction principle relies on the flawed premise that the FLSA ''pursues' 'its remedial purpose ''at all costs.'' *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (*quoting Rodriguez v. United States*, 480 U.S. 522, 525–526, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam )); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. ——, ——, 137 S.Ct. 1718, 1725, 198 L.Ed.2d 177 (2017) ('[I]t is quite mistaken to assume ... that whatever might appear to further the statute's primary objective must be the law' (internal quotation marks and alterations omitted)). But the FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. *Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement. See id., at* ——, 137 S.Ct., at 1725 ('Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of

3

passage'). We thus have no license to give the exemption anything but a fair reading.

The employer is not guilty until proven innocent. FLSA exemptions, such as the outside sales exemption and the highly compensated employee exemption, are not construed against the employer. To the contrary, Plaintiffs earned six and seven figures working for MLD, which *per se*, indicates that they were exempt. In *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012), the United States Supreme Court held that employees who, "earned an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each week performing work related to his assigned portfolio of drugs in his assigned sales territory—are hardly the kind of employees that the FLSA was intended to protect." This applies even more so in the instant case.

As Plaintiffs note, the FLSA does not define "outside salesman." Courts determine this exemption by resort to a multi-factor test, which favors Defendants, as set forth below:

(1) <u>Whether the employee generates commissions for himself through his work</u>

In the present case, Plaintiffs were paid on a commission only basis for part of their employment; Plaintiffs generated commissions by selling mortgage products. Neither party disputes that commissions were generated through the efforts of Plaintiffs, even though they were paid differently for self-generated and company-generated leads. Plaintiffs Rakeman and Schiele claim that 97% of their sales were self-generated and, therefore, generated the commissions for themselves. This factor favors Defendants.

(2) <u>The level of supervision of the employee</u>

Not only were Plaintiffs Rakeman and Schiele hardly supervised, they actually hired, directed, and compensated other OMLO's to handle their overflow work, and to write scripts and

assist in their marketing (Defendants' Memorandum of Law, p. 11). Despite the fact that Plaintiffs blithely claim that "Rakeman and Schiele spent their days originating loans" (Plaintiffs' brief at 17), but Rakeman and Schiele hired and paid more than $160,000 to other OMLO's for their services in 2014 (Defendants' Memorandum of Law, p. 11). Further, other employees at MLD indicated their Department on their timesheets as "Mike and Brian," or "M&B" (Exhibit K to Defendants' Rule 56.1 Statement). This indicates that Rakeman and Schiele were supervisors, not supervisees, at MLD. The other OMLO's were left to manage their own portfolios of mortgage products, and could come and go to the office as they pleased (Defendants' Memorandum of Law, p. 11); consequently, there was very little supervision of their work. This factor favors Defendants.

(3) <u>The amount of work done away from the employer's place of business</u>

While Plaintiffs worked at the East Meadow office of Defendants, they were not required to do so, as set forth in the Employment Agreements they executed (Exhibit F to Declaration of Raymond Nardo). Moreover, Plaintiffs worked at their homes, restaurants, and other locations because their phones were "ringing nonstop" (Defendants' Rule 56.1 Statement, ¶ 21). Plaintiffs estimated they worked that they spent 20% of their time out of the office, worked two to two and one half hours at home each day, worked 20 to 25 hours per week at home, and marketed on weekends (Defendants' Memorandum of Law, p. 7). They worked away from the employer's premises.

(4) <u>Whether the employee independently solicits new business</u>

There is no serious dispute that this was the job of Plaintiffs. More specifically, Plaintiffs Rakeman and Schiele employed OMLO's to assist them market radio advertisements to solicit

5

new business. In fact, all Plaintiffs were independently soliciting new business, especially Rakeman and Schiele. This favors Defendants.

    (5) <u>The extent to which the employee's work is unsuitable to an hourly wage</u>

Plaintiffs' work patterns were not suitable for an hourly wage. They testified that they were working constantly. An employer cannot track time when an employee is out of the office and checks emails, checks phone messages, and returns emails and phone calls, whenever and wherever the employee deems necessary. There is no suitable clock in and clock out procedure to govern this, and the administrative impossibility makes these OMLO's unsuitable for an hourly wages. As set forth in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012), "it would be challenging, to say the least, for pharmaceutical companies to compensate detailers for overtime going forward without significantly changing the nature of that position." This favors Defendants.

    (6) <u>Whether the employee was required to meet some minimum production standards</u>

Plaintiffs were paid different amounts each month, and each year, based upon their production. Neither their OMLO Agreements, nor any written or verbal policy, enforced minimum production standards. This favors Defendants.

Plaintiffs claim that Defendants Rakeman and Schiele were not engaging in managerial duties sufficient for the white collar exemption to apply. In fact, Rakeman and Schiele were hiring, directing, and compensating, other OMLO's to handle their overflow work, and to write scripts and assist in their radio marketing (Defendants'

6

Memorandum of Law, p. 11). This is sufficient managerial contact for the white collar exemption.

Importantly, Defendants need only show one (or more) managerial duties under the white collar exemption. Unlike other exemptions, the white collar exemption does not have a primary duties test. Instead, it requires that the employee be paid greater than $100,000 per year and "perform[] *any one or more* of the exempt duties or responsibilities of an executive, administrative or professional employee." This is because the high level of compensation "is a strong indicator of an employee's exempt status, *thus eliminating the need for a detailed analysis of the employee's job duties.*" 29 C.F.R. § 541.601(c). Nonetheless, Plaintiffs engaged in a detailed analysis of the managerial and executive exemptions, contrary to the requirements of the white collar exemption. Defendants have shown that Plaintiffs are paid on an hourly basis and have "one or more of the exempt duties or responsibilities," of the executive or administrative exemptions; this establishes the white collar exemption as a matter of law. Defendants are *not* claiming that Plaintiffs fall within the administrative or executive exemptions, which would require a primary duty other than selling.

Plaintiffs cite *Davis v. JPMorgan Chase*, 587 F.3d 529 (2d Cir. 2009), for the proposition that loan underwriters do not qualify for the administrative exemption since, *inter alia,* "they were trained only to apply the credit policies as they found it" (Plaintiffs' Memorandum of Law, p. 20). This misses the mark. Defendants need only prove that Plaintiffs exercised one criterion of the administrative exemption – that they exercised independent discretion and judgment to fit the various loan products with the customer's needs, for instance, as further set forth in Point III of Defendants'

7

memorandum of law. This is sufficient for the white collar exemption. Defendants do not have to prove, and are not attempting to prove, that Plaintiffs were exempt as administrative or executive employees and the primary duties test for these exemptions is not relevant.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment must be granted, and the case dismissed.

Dated: Mineola, NY
      January 28, 2020

                                      Respectfully submitted,

                                      RAYMOND NARDO, P.C.
                                      Counsel for Defendants

By: _____
                                      RAYMOND NARDO, ESQ.
                                      129 Third Street
                                      Mineola, NY 11501
                                      (516) 248-2121

## CERTIFICATE OF SERVICE

I certify that on January 28, 2020, I, Raymond Nardo, served by:

__ mailed, first class          __ return receipt requested

__ overnite mailed              __ faxed

XX  Email                       ___ by ECF

the enclosed:

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURUSANT TO RULE 56**

TO:

Justin Reilly, Esq.
Neil H. Greenberg & Associates, P.C.
4242 Merrick Road
Massapequa, NY 11758
justin@nhglaw.com

_____
RAYMOND NARDO, ESQ.